UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN W. KEELER,

      Plaintiff,

v.                                                            Case No. 1:10-cv-960
                                                             Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
                                               /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on August 27, 1963 (AR 55).[1] He did not complete high school but obtained a GED in approximately 1990 (AR 83). Plaintiff alleged a disability onset date of March 31, 2000 (AR 55). He had previous employment as a self-employed construction worker (AR 77). Plaintiff identified his disabling conditions as: attention deficit hyperactivity disorder (ADHD); chronic depression; panic/anxiety disorder; degenerative arthritis in lower back; bulging discs; gastroesophageal reflux disease (GERD); knee problems; high blood pressure; "carpal tunnel"; low blood sugar; "mercer" [sic]; "left shoulder is bad"; heart problems; "had 3 strokes" (AR 76). Plaintiff stated that he stropped working on March 31, 2000 because he had an auto accident (AR 76). However, plaintiff did not file his application until July 25, 2006 (AR 15, 55). On October 20,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 15-33). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**II.  ALJ'S DECISION**

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 31, 2000 and met the insured status requirements of the Social Security Act through December 31, 2000 (AR 17). At step two, the ALJ found that plaintiff suffered from severe impairments as follows: degenerative disc disease; chronic pulmonary obstructive disorder (COPD); depression; attention deficit / hyperactivity disorder (ADHD); anxiety disorder; panic disorder; alcohol dependence, in remission; marijuana dependence, in remission; and cocaine dependence with continued intermittent use (AR 17). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders) and 12.09 (Substance Addiction Disorders) (AR 17-19).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. The claimant should never use ladders, scaffolds, ropes; and only occasionally use ramps of stairs, stoop, crouch, kneel, crawl, or balance. He should avoid moderate exposure to fumes, odors, dust, gases, or poor ventilation. The claimant should only occasionally bend, twist, or turn at the waist or neck. The claimant is limited to

> simple unskilled work with a specific vocational preparation (SVP) rating of 1 or 2. The claimant is limited to work that requires minimal interpersonal interaction, contact, or discussion with co-workers; and work that does not require working in close physical proximity of co-workers. The claimant is also limited to work that requires only brief and superficial contact with the general public.

(AR 19). The ALJ further found that plaintiff could not perform his past relevant work (AR 31).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 31-32). Specifically, plaintiff could perform 10,100 jobs in the regional economy (identified as the lower peninsula of Michigan) at both the light and sedentary exertional levels (AR 31-32). The light jobs included inspector (2,000 positions), order clerk (2,000 positions) and part sorter (1,500 positions) (AR 32). The sedentary jobs included inspector at a bench or table (1,700 positions), surveillance system monitor (500 positions), order clerk (1,400 positions), and part sorter (1,000 positions) (AR 32). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from March 31, 2000 through the date of the decision (October 20, 2008) (AR 32-33).

### III. ANALYSIS

Plaintiff raised one issue (with two sub-issues) on appeal.

**There is no substantial evidence to justify ignoring the opinions of treating and consulting physicians that have determined that the claimant has severe physical and mental limitations which eliminate the ability to perform substantial gainful employment.**

#### A. Physical impairments

Plaintiff contests the ALJ's RFC determination, setting forth a conclusory argument as follows:

> The claimant's treating doctor have [sic] stated the claimant can not perform any full time work activity. (TR 19, 107, 146). There are objective test results cited by the physicians to support the conclusions.

5

Plaintiff's Brief at p. 7. After setting forth the legal standard applicable to an ALJ's evaluation of treating physician opinions, plaintiff concludes his argument as follows:

> The treating doctor concluded, with supporting data, that the claimant cannot frequently lift over ten pounds. No physician in this record has concluded otherwise. In fact, THE COMMISSIONERS [sic] OWN CONSULTING EXAMINER has specifically affirmed a weight lifting restriction of no more than 5 to 10 pounds ! (TR 107) [.] The ALJ's conclusions to the contrary are without substantial evidence and unsupported by any medical data.

*Id.* at p. 9.

While plaintiff's statement of error refers to the opinions of treating and consulting physicians, plaintiff does not identify any "treating doctor" and his proffered citations do not relate to opinions expressed by a treating physician.[2] Of the three pages cited in support of this claim, one page is not a medical record, but rather part of the ALJ's decision (AR 19). Another cited record is the third page of a December 6, 2006 report by Thomas W. Keaveney, M.D. of Occupational Health Services (AR 107). The administrative record does not contain the first page of the report and plaintiff does not identify Dr. Keaveney. In assessing plaintiff's degenerative disc disease, the doctor stated "I do not believe that he should be lifting anything more than 5 - 10 pounds nor should

---

[2] In his response brief, the Commissioner speculates that the unidentified treating physician is Dr. Fretwell, because she was the only treating medical source to provide opinions (AR 129-31, 687-90). Defendant's Brief at p. 16. Dr. Fretwell's opinions, however, do not set forth the limitations cited by plaintiff, i.e., that the claimant cannot frequently lift over ten pounds. In a Medical Needs statement prepared for the Michigan Department of Human Services on August 21, 2006, Dr Fretwell set forth much more extreme limitations, stating that plaintiff could *never* lift and/or carry *any* weight (AR 129-31) (emphasis added). Approximately one year later, on September 20, 2007, Dr. Fretwell opined that plaintiff could occasionally lift and carry 5 pounds (AR 687-90). The court will not address claims related to Dr. Fretwell's opinions, which plaintiff did not articulate in his brief. The administrative transcript in this case contains 1,380 pages of medical records (AR 89-1468). Plaintiff's counsel was presumably capable of reviewing the transcript and identifying the name of the relevant treating physician, identifying the relevant opinions of that physician, identifying the evidence which supports those opinions, and explaining why the ALJ's decision failed to adequately address that opinion. A court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

he be doing any repetitive bending or twisting" (AR 107).   The third cited record is the third page of a December 6, 2007 report by Dr. Keaveney as part of an Ingham County FIA examination (AR 146).  In assessing plaintiff's "chronic back and thumb pain," the doctor expressed a similar lifting limitation, i.e., "[h]e should not be doing any lifting, probably no more than 10 pounds, nor should he be doing any repetitive bending or twisting" (AR 146).

It is unnecessary for the court to address plaintiff's cryptic (and essentially undeveloped) claim that the ALJ ignored the opinions of treating or consulting physicians.  The issue before the court is whether the ALJ's RFC determination, that plaintiff can lift 20 pounds frequently and 10 pounds occasionally, is supported by substantial evidence (AR 19).  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  20 C.F.R. §§ 404.1545 and 416.945.  RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis.  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

Plaintiff appears to argue that the ALJ erred in failing to adopt Dr. Keaveney's position that plaintiff can lift only 5 to 10 pounds.  Assuming that the ALJ committed such an error, there is no basis for a reversal or remand of the ALJ's decision because the error was harmless.  The ability to lift 5 to 10 pounds falls within the definition of sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567 and 416.967. While the ALJ found that plaintiff could perform 5,500 jobs at the light exertional level, the ALJ also found that plaintiff could perform 4,600 jobs at the sedentary exertional level (such as inspector at a bench or table, surveillance system monitor, order clerk and part sorter) (AR 32, 1520-22). The VE explained that these sedentary jobs involved minimal physical exertion and "could be done with one hand":

> The inspection positions are typically visual, you might have to pick up a part. Surveillance system monitorer [sic], very little hand use. Order clerk, pencil, possibly picking up items one handed, again. Parts sorter obviously would have to pick up and, and sort.

(AR 1526).

Even if plaintiff could only lift 5 to 10 pounds, the ALJ's decision denying benefits is supported by substantial evidence. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). "When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir. 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Accordingly, plaintiff's claim regarding the ALJ's evaluation of his physical impairments should be denied.

### B. Mental impairments

Plaintiff contends that the ALJ committed error because he failed to mention that two examining consultants from Comprehensive Psychological Services, P.C., psychologists Steve Geiger, Ph.D. and J. Keith Ostien, Ph.D., gave plaintiff a "poor" prognosis in their psychological examinations. Plaintiff's Brief at p. 9. In support of this contention, plaintiff cites Dr. Geiger's

examination of October 5, 2006, prepared for the Michigan Disability Determination Service, in which the doctor found that plaintiff had a "poor prognosis" and a Global Assessment of Functioning (GAF) score of 50 (AR 113).[3] This GAF score lies within the 51 to 60 range, which indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), p. 34. Six days later, Dr. Ostien examined plaintiff on behalf of the Ingham County Department of Human Services (AR 123). At that time, Dr. Ostien also found that plaintiff had a poor prognosis, explaining that "Kevin remains in need of multiple social services to include substance abuse treatment, outpatient mental health treatment, medical attention, and possible vocational training in the future" (AR 123). Dr. Ostien found that plaintiff had a slightly higher GAF of 52, which like Dr. Geiger's GAF score of 50 indicates "moderate symptoms" (AR 123).

While plaintiff obliquely refers to the ALJ's finding that plaintiff did not meet the criteria for establishing a mental impairment under Listings 12.04, 12.06 or 12.09 (AR 18-19), he does not articulate any argument with respect to those Listings other than to assert that the ALJ's determination that "the claimant has mo [sic] marked limitations in functioning" is unsupported by

---

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

the evidence.  *See* Plaintiff's Brief at pp. 9-10 ("[t]he Judge noted in his decision that in his psychological examinations with the Michigan Disability Determination Services, Mr. Keeler's memory showed minor issues with memory [sic] and concentration, as well as issues with the claimant meeting the criteria for mental impairments. (TR 19)."). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems plaintiff's challenge to the ALJ's Step three determination that plaintiff did not meet the requirement of a listed mental impairment as waived.

Plaintiff appears to seek reversal or remand based upon the GAF scores assigned by Drs. Geiger and Ostien.  The ALJ was not bound by the GAF scores.  While GAF score may help an ALJ assess a claimant's mental RFC, it is not raw medical data.  *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 503 n. 7 (6th Cir. 2006).  "Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Id.*  The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score.  *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996).  *See Kornecky*, 167 Fed. Appx. at 511 ("we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"), citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002).

Furthermore, to the extent that plaintiff relies on the GAF scores of 50 and 52 as evidence of his RFC, such scores do not speak to any particular mental limitation but reflect a

10

general observation that plaintiff exhibits moderate symptoms and moderate difficulty in social, occupational, or school functioning .  The ALJ's RFC accounted for these types of symptoms and difficulties by limiting plaintiff to simple unskilled work with an SVP rating of 1 or 2; work that requires minimal interpersonal interaction, contact, or discussion with co-workers; work that does not require working in close physical proximity of co-workers; and work that requires only brief and superficial contact with the general public (AR 19).  Accordingly, plaintiff's claim regarding the ALJ's evaluation of his mental impairments should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  February 3, 2012                          /s/ Hugh W. Brenneman, Jr.
                                                  HUGH W. BRENNEMAN, JR.
                                                  United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).